NOTICE
Decision filed 08/13/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250556-U

NO. 5-25-0556

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 24-CF-1124 |
| | ) | |
| REGINALD J. TATE, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOLLINGER delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where defendant failed to file a timely postplea motion, and where there were no errors in the circuit court's admonishments that would excuse defendant's failure, this court is precluded from considering the merits of defendant's appeal. Because no argument to the contrary would have arguable merit, this court grants appellate counsel leave to withdraw, and dismisses defendant's appeal.

¶ 2    Defendant, Reginald J. Tate, appeals the judgment of the circuit court of St. Clair County that found the circuit court did not have jurisdiction to consider defendant's untimely *pro se* motions that challenged his conviction and sentence following his plea of guilty to the offense of aggravated domestic battery/strangle. Defendant's appointed counsel on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks arguable merit, and on that basis, OSAD has filed a motion for leave to withdraw as counsel (see *Anders v. California*, 386 U.S. 738 (1967)), along with a supporting memorandum of law. OSAD served defendant with

1

notice. This court provided defendant the opportunity to file a written response to OSAD's motion. Defendant has filed a response. This court has examined and considered OSAD's *Anders* motion and memorandum of law, defendant's response, and the record on appeal. This court concludes that OSAD is correct that this appeal lacks arguable merit. Accordingly, we grant OSAD leave to withdraw as counsel, and we dismiss defendant's appeal.

¶ 3                                    I. BACKGROUND

¶ 4     On July 8, 2024, defendant was charged by information with one count of aggravated domestic battery/strangle, a Class 2 felony (count I), and one count of domestic battery/bodily harm, a Class A misdemeanor (count II). Count I alleged that on or about July 6, 2024, defendant strangled the victim, A.B., a family/household member of defendant, in that "defendant intentionally impeded the normal breathing of [A.B.] by applying pressure to [her] neck." Count II alleged that on or about July 6, 2024, defendant "knowingly made physical contact of an insulting or provoking nature with" A.B., in that defendant "punched her about her body."

¶ 5     On November 14, 2024, defendant—who had been in custody since his arrest on July 6, 2024—appeared in court with his retained private counsel. The State announced that defendant wished to enter a plea of guilty to count I, in exchange for the State agreeing to "cap its [sentencing] request at five years." As part of the agreement, defendant "could ask for any lawful sentence including probation up to 48 months." The State noted that defendant was extended-term eligible on count I, that "Truth-in-Sentencing would apply at 85 percent," and that any sentence on count I would be followed by four years of mandatory supervised release (MSR). The State added that it would ask for count II to be dismissed at the time of sentencing.

¶ 6     Defense counsel agreed with the terms stated above, and the circuit court questioned defendant to ensure his plea was knowingly, intelligently, and voluntarily made. The circuit court

2

read the allegation in count I to defendant, and stated that because count I was a Class 2 felony, and because defendant was extended-term eligible, if defendant was sentenced to the Illinois Department of Corrections (IDOC), the sentencing range would be 3 to 14 years, followed by 4 years of MSR, with the sentence to be served at 85%. Defendant stated that he understood the charge and possible sentences. The circuit court admonished defendant as to the rights he was giving up by entering a plea of guilty, and ensured defendant understood these rights and understood that he was waiving them by pleading guilty.

¶ 7        As a factual basis for the plea, the State asserted that if the matter went to trial, the State "would put forth sufficient evidence to prove beyond a reasonable doubt that on or about July 6, 2024, deputies from the St. Clair County Sheriff's department were dispatched to" defendant's home, where they met with A.B., who stated that defendant "battered her." Specifically, A.B. told deputies that following an argument, "defendant pushed her on the bed and used his forearm to apply pressure to her throat, impairing her ability to breathe." A.B. told the deputies "that she suffered from ringing ears, a raspy voice, lightheadedness and shortness of breath while this defendant was choking her." The State added that the deputies "observed injuries to her neck consistent with her narrative." The defense stipulated that the evidence was sufficient for a conviction.

¶ 8        The circuit court further admonished defendant before accepting the plea agreement, specifically asking defendant, "has anyone threatened you or promised you anything or offered you anything to get you to enter into a plea of guilty?" Defendant answered, "No." Defendant thereafter assured the circuit court that he was entering his plea "freely and voluntarily," and that he understood that his plea could impact his future ability to legally own a firearm.

3

¶ 9     The circuit court stated that defendant had heard the nature of the charge and the range of possible penalties, the rights defendant was waiving by entering a guilty plea, and the factual basis for the plea agreement. The circuit court then asked defendant, "How do you plead to the charge of aggravated domestic battery by strangulation?" Defendant answered, "Guilty." The circuit court found a factual basis for the plea, and accepted the plea. The matter was set for sentencing.

¶ 10    On January 9, 2025, the sentencing hearing began. The State requested a sentence of five years in IDOC, to be served at 85%, and to be followed by four years of MSR. The State argued that its proposed sentence was necessary due to the following aggravating factors: (1) defendant's prior criminal history, which the State alleged spanned "almost 40 years, his entire adult life"; (2) the need to deter others from committing the same crime; and (3) the fact that defendant was on probation at the time of the offense. The State noted that defendant had prior recent convictions for domestic battery, involving victims other than A.B., and that defendant was "in domestic violence diversion when this offense occurred."

¶ 11    Defendant's counsel argued that defendant had served honorably in the United States Army, had recently been diagnosed with anxiety and depression, and was now seeking medical treatment for his mental health issues, rather than self-medicating with alcohol as he had done in the past. Defense counsel asked that defendant be permitted to "reengage" with the court's redeploy diversion program. The circuit court stated that it wished to review its notes regarding defendant and the redeploy program, and would continue the sentencing hearing so that it could do so.

¶ 12    On January 31, 2025, the sentencing hearing was reconvened. The circuit court stated that it had "received some documents in mitigation from the defense" involving defendant's behavioral and mental health treatment. In argument, defense counsel reiterated that defendant was a veteran,

4

and that at age 59, defendant was attempting to address longstanding mental health issues. Defense counsel argued that defendant was "at a point in his life that if given the right structure moving forward and an opportunity to prove to the Court that he can maintain [stability]," defendant would not have any additional legal problems. He requested placement for defendant "in redeploy or, in the alternative, any other alternative probation the Court may deem necessary." Defendant offered a statement in allocution in which he apologized for his actions and discussed the treatment he was receiving.

¶ 13    The circuit court expressed appreciation for defendant's efforts to address his mental health issues, but added, "you don't get to strangle somebody. You don't get to batter someone. You do not get to inflict your trauma on other people." The circuit court stated that it was sentencing defendant to three years in IDOC, followed by four years of MSR. The circuit court informed defendant of his right to appeal, including that

> "before you file a notice of appeal, you must file a motion asking the Court to set aside the judgment and allow you to withdraw your plea. That motion would have to be filed in writing within 30 days setting forth the reasons that you're asking me to make that determination. Anything you don't bring up in that motion you won't be able to bring up at the appellate level, should it get to that point. If I grant the motion, the judgment will be set aside, the plea will be withdrawn, and we'll bring the case back on the docket as if you never entered your plea. If I deny the motion, you have 30 days from that date to file your notice of appeal. If we find you can't afford the required transcripts or representation, they'll be provided for you."

The circuit court also advised defendant that his sentence would have to be served at 85% due to truth-in-sentencing laws.

5

¶ 14    A little over two months later, on April 8, 2025, the circuit clerk file-stamped a *pro se* handwritten letter from defendant, dated March 27, 2025, in which defendant stated that he wished "to give notice of" his intent to file a motion for reduction of sentence, and a motion to withdraw his guilty plea. He asked for an extension of time to file the motions. He stated that he was in custody at Sheridan Correctional Center, and had "been unable to make the necessary investigation and research in order to prepare and file" his motions. He stated that his failure to file the "motions within 30 days was not due to [his] negligence," because (1) his February 3, 2025, in-custody request at the St. Clair County jail "for necessary materials and notary" to file the motions "was not granted due to transportation to the [IDOC] in Menard" on February 7, 2025; (2) his February 11, 2025, in-custody request while at Menard to use "the law library for necessary materials and notary in order to prepare and file" his motions "was not granted due to lack of staff, security and restriction of movement while in receiving status for the [IDOC]"; (3) he "remained in Menard Correctional Center until March 19, 2025, without necessary materials and notary in order to prepare and file motions"; and (4) although he was currently at Sheridan, and had requested "necessary materials and notary" there on March 24, 2025, he needed additional "time within which to prepare and file" his motions. He asked to be given until April 30, 2025, to file the motions.

¶ 15    On May 5, 2025, defendant filed his *pro se* motion to withdraw guilty plea and vacate sentence, and his *pro se* motion for reduction of sentence. Neither motion addressed the fact that it was filed late, or offered any justification for the late filing. Defendant's affidavits, filed with the motions, did not address the issue of timeliness either. Also on May 5, 2025, the circuit court entered a written order in which it found that it no longer had jurisdiction over the case, and could not grant defendant the relief he requested. This timely appeal followed.

¶ 16                                II. ANALYSIS

¶ 17    In the legal memorandum that accompanies its *Anders* motion to withdraw, OSAD notes the following two potential issues: (1) whether this court is precluded from considering the merits of defendant's appeal because defendant did not file any timely postplea motions, and (2) whether there were any errors in the circuit court's admonishments that would excuse defendant's failure to file a timely postplea motion. However, OSAD concludes that neither issue has arguable merit. For the following reasons, we agree.

¶ 18    As OSAD correctly notes, Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024) states that before a defendant may appeal a judgment entered following a plea of guilty, the defendant must file, within 30 days of the date upon which the defendant was sentenced, a motion to reconsider sentence, or a motion to withdraw guilty plea and vacate the judgment. As OSAD further correctly notes, because defendant was sentenced on January 31, 2025, and because the thirtieth day after that was Sunday, March 2, 2025, defendant was required to file his postplea motions no later than Monday, March 3, 2025. As described above, he did not file his motions until over two months later, on May 5, 2025.

¶ 19    The Illinois Supreme Court has held that Rule 604(d) creates a condition precedent that must be satisfied before a defendant may pursue an appeal from a judgment entered following a plea of guilty. *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 40 (2011). Accordingly, "[a]s a general rule, the failure to file a timely Rule 604(d) motion precludes the appellate court from considering the appeal on the merits." *Id.* In such circumstances, "the appellate court must dismiss the appeal." *Id.* As the *Skryd* court noted, Rule 604(d) has ramifications for the circuit court as well. *Id.* If more than 30 days have elapsed since a defendant's sentence was imposed, and the circuit court has not extended the deadline for filing a postplea motion following the receipt of a

7

proper request for an extension from the defendant for good cause shown, the circuit court is divested of jurisdiction to entertain any subsequent postplea motions. *Id.* at 41; *People v. Flowers*, 208 Ill. 2d 291, 300 (2003) (extension of time to file postplea motion must be granted by circuit court prior to expiration of 30-day period specified by Rule 604(d)).

¶ 20     In this case, although defendant filed a request for an extension of time to file his postplea motions, and attempted to assert good cause—or, as he framed it, lack of negligence on his part— for his failure to meet the 30-day requirement for filing the motions, his request was not received and file-stamped by the circuit court until April 8, 2025, and was not even written by defendant until March 27, 2025, both well beyond the 30-day time limit for him to file such a request. Accordingly, defendant's belated request for an extension of time did not prevent the circuit court from losing jurisdiction over the case. OSAD is therefore correct that there is no arguable merit to a claim that this court may consider the merits of defendant's appeal.

¶ 21     However, as OSAD notes, an exception to the foregoing—known as the "admonition exception" to Rule 604(d)—exists if the circuit court failed to properly admonish a defendant as to that defendant's right to an appeal. *Skryd*, 241 Ill. 2d at 41. In this case, the circuit court did not fail to properly admonish defendant. As OSAD points out, Illinois Supreme Court Rule 605(c) (eff. Jan. 1, 2026), which governs appeal admonishments following a judgment and sentence entered on a negotiated plea of guilty, required the circuit court to admonish defendant "substantially" as to the following:

> "(1) that the defendant has a right to appeal;
>
> (2) that prior to taking an appeal the defendant must file in the trial court, within 30 days of the date on which sentence is imposed, a written motion asking to have the

judgment vacated and for leave to withdraw the plea of guilty, setting forth the grounds for the motion;

(3) that if the motion is allowed, the plea of guilty, sentence and judgment will be vacated and a trial date will be set on the charges to which the plea of guilty was made;

(4) that upon the request of the State any charges that may have been dismissed as a part of a plea agreement will be reinstated and will also be set for trial;

(5) that if the defendant is indigent, a copy of the transcript of the proceedings at the time of the defendant's plea of guilty and sentence will be provided without cost to the defendant and counsel will be appointed to assist the defendant with the preparation of the motions; and

(6) that in any appeal taken from the judgment on the plea of guilty any issue or claim of error not raised in the motion to vacate the judgment and to withdraw the plea of guilty shall be deemed waived."

¶ 22    As OSAD points out, only substantial—rather than strict—compliance with Rule 605(c) is required. See, *e.g.*, *People v. Dominguez*, 2012 IL 111336, ¶ 22. Accordingly, a verbatim reading of Rule 605(c) is not required. *Id.* To the contrary, substantial compliance with the rule will be found if the circuit court advises the defendant "in such a way that the defendant is properly informed, or put on notice, of what he must do in order to preserve his right to appeal his guilty plea or sentence." *Id.* Put another way, if "the court's admonitions were sufficient to impart to a defendant the essence or substance of the rule, the court has substantially complied with the rule." *Id.*

¶ 23    In this case, we agree with OSAD that the circuit court's Rule 605(c) admonishments substantially complied with the rule, because they properly informed defendant of what he must

do in order to preserve his right to appeal. As described above, the circuit court admonished defendant that he had the right to appeal, and added the following:

"before you file a notice of appeal, you must file a motion asking the court to set aside the judgment and allow you to withdraw your plea. That motion would have to be filed in writing within 30 days setting forth the reasons that you're asking me to make that determination. Anything you don't bring up in that motion you won't be able to bring up at the appellate level, should it get to that point. If I grant the motion, the judgment will be set aside, the plea will be withdrawn, and we'll bring the case back on the docket as if you never entered your plea. If I deny the motion, you have 30 days from that date to file your notice of appeal. If we find you can't afford the required transcripts or representation, they'll be provided for you."

Defendant has not ever claimed in this case that he did not know what he was required to do to perfect his appeal. In his letter to the circuit court, and in his response in this court to OSAD's motion to withdraw, defendant made it clear that he knew he was required to file postplea motions within 30 days of his sentencing, and he attempted to present reasons why his failure to do so was not due to his own negligence. Therefore, OSAD is correct that there would be no arguable merit to a claim that errors in the circuit court's Rule 605(c) admonishments excused defendant's failure to file timely postplea motions.

¶ 24                                                    III. CONCLUSION

¶ 25      This court is precluded from considering the merits of defendant's claims on appeal because defendant did not file a timely postplea motion, and because there were no errors in the circuit court's Rule 605(c) admonishments that would excuse defendant's failure. No argument to

10

the contrary would have arguable merit. Accordingly, we grant OSAD leave to withdraw as counsel, and we dismiss defendant's appeal.

¶ 26    Motion granted; appeal dismissed.